**PAT'S SUPERMARKET INC.**
**vs.**
**COMMISSIONER OF REVENUE,**
(Formerly State Tax Comm.)

**No. 102791**

Appellate Tax Board
Commonwealth of Massachusetts

**November 25, 1981**

**Lawrence M. Sinclair,** Esq., for appellant
**Joseph L. Hachey, Jr.,** Esq., for the appellee

This is an appeal under the formal procedure pursuant to G.L.c. 62C, § 39 from the refusal of the appellee to abate a meals tax assessed under c. 64B to the appellant with regard to certain reporting periods beginning November 1975 through August 1977.

These findings of fact and report are made pursuant to a request by the ap-

pellee under the provisions of c. 58A, § 13, as amended.

## FINDINGS OF FACT AND REPORT

The appellant, Pat's Supermarket Inc. (Supermarket), is a Massachusetts business corporation with a principal place of business in Holyoke, Mass. It is engaged in the food retailing business normally associated with small local supermarkets. Appellant operates stores from three locations in Holyoke and Chicopee, Mass. Only the Holyoke supermarket at 13 Cabot Street, which prepares and sells "party packs" from the delicatessen section of the store, is involved in this appeal.

A typical "party pack" to feed approximately forty people contains the following:

1 - 1 pound 8 ounces of turkey roll
2 - 3 pounds of sliced roast beef
3 - 3 pounds 12 ounces of cole slaw
4 - 3 pounds of sliced ham
5 - 7 pounds 8 ounces of baked beans
6 - 3 pounds of macaroni salad
7 - 4 pounds of meatballs
8 - 7 pounds 8 ounces of potato salad
9 - packages of "Arnold Rolls" and "Liberty Bakery" cake squares

It also contains a one-pound can of coffee, ½ gallon of milk, box of sugar cubes, jar of ketchup, jar of mustard, jar of pickles, box of 40 paper plates, pack of napkins, packages of cups and plastic knives, forks and spoons.

The food is packed in an assortment of covered trays of various sizes in a cardboard box. The cold cuts are packed on #12 trays made of cardboard, tin foil and plastic covered. The meatballs, baked beans and other food to be served hot are packed in dispensable covered lightweight aluminum trays that are reheatable. (The trays were introduced in evidence. See, Exhibit 6, also Exhibit 5 and application for abatement.)

As a result of an audit of the Holyoke supermarket in July of 1977, notices of assessment of meals taxes were sent to the appellant on or about August 11, 1978. The meals taxes assessed on the "party packs" were in the amount of $7,809 plus interest and penalties, and covered the period from November 19, 1975 through August 1977. The appellant paid the meals taxes assessed over a period from December 21, 1978 to May 20, 1979. On or about October 16, 1978, the appellant filed on an approved form an application for abatement of the meals taxes for the period from November 19, 1975 through August 1977. By letter dated February 21, 1978, the State Tax Commission (Commission) denied the application for abatement. A timely appeal was filed with this board on March 30, 1979.

On April 18, 1979 the Commissioner of Revenue (Commissioner) filed a plea in bar on the ground that the appellant did not file any meals tax return for the periods involved in this appeal under c. 62C, § 38. After a hearing on the plea in bar, it was denied on July 18, 1979. No notice had been given to the appellant to file meals tax returns for the periods in question. (See, c. 62C, §§ 28, 38).

Located within the appellant's supermarket in Holyoke is a delicatessen section like delicatessen departments found in many supermarkets today. The delicatessen section of the appellant's store consists of a counter and display of meats, cheeses, etc. The customer may order whatever quantity of a particular item he desires over the counter. Over the same counter, without any physical separation or demarcation, there were also sold "party packs". These "party packs" are preassembled or made to order and consist of an assortment of covered trays of varying sizes filled with different kinds of bulk food by weight as described above.

The "party packs" are not divided into individual servings but are sold in bulk. Orders for "party packs" are requested to be placed at least three days in advance. They are kept in the meat cooler until ready to be sold. The advertisements and circulars published by the appellant describe four different "party packs" or "smorgasbords" according to the type of food. The minimum order is for forty

people. All of the items contained in the "party packs" or "smorgasbords" could be purchased separately over the counter of the delicatessen department or other sections of the supermarket. The "party packs" were not designed to be consumed by one person or for on-the-premises consumption.

The price is stated in the advertisements from $1.49 to $1.89 per person. The per person price is determined by the appellant from a chart which lists the number of pounds of food needed for the number of persons to be served, the retail price per pound, to which is added 10% for assembling the "party packs". No services other than the preparation of the "party packs" were performed by the appellant.

The "party packs" are paid for at the check-out counter of the supermarket along with all other items purchased. There was no home delivery. The food is not heated.

It was estimated by the appellant that "party packs" constituted less than 1% of the supermarket's gross sales for the years in question.

"Party packs" are intended to be consumed by large groups of people. Some of the food would have to be heated and further preparation is needed, such as heating the water, making the coffee, etc. The food would normally be eaten smorgasbord style with the person serving himself. They are not catered dinners as shown by Exhibit 4. There was no evidence that the "party packs" are normally sold at lunch counters, coffee shops or snack bars. Richard Paradis, appellant's treasurer and plant supervisor, did not know of any such place that sold "party packs".

Insofar as it is a question of fact, the board finds that the sale of the "party packs" or "smorgasbords" is a sale of bulk food. The "party packs" are not a "meal" and the delicatessen section of the supermarket where it is sold is not a "restaurant" or a "catering business" as these words are used in c. 64B.

## OPINION

The first issue is whether the board has jurisdiction to hear this appeal where appellant did not file any meals tax return[1] as set forth in c. 62C, § 38[2].

Said section 38 provides in relevant part as follows:

"No tax assessed on any person **liable to taxation**[*] shall be abated unless the person assessed shall have filed at or before the time of bringing his application for abatement, a return as required by this chapter for the period to which his application relates;..."

The statute is quite clear that only persons "liable to taxation" are required to file a return, as required by this chapter, as a prerequisite to filing an application for abatement of an assessed tax.

Section 16(b) of said c. 62C, as added by St. 1976, c. 415, § 22, effective January 1, 1977, requires every person subject to taxation under Chapter sixty-four B to file a monthly return within twenty days after the expiration of the period covered thereby.

If the appellant is not "liable to taxation", then it is not required to file a meals tax return under said section 38.

Chapter 64B, §§ 1 and 2 as in effect for the period of time in question, imposes an excise tax on charges for "meals" defined in said statute. The board found that "party packs" sold by the appellant are not "meals" as defined in said statute. Therefore, the appellant in selling the "party packs" did not make a charge for any "meals" for the period in question, is not a person "liable to taxation", and

---

1. Prior to January 1, 1978, the meals tax was codified at Chapter 64B. St. 1977, c. 363A, §§ 43, 45 & 46 amended the statutory scheme by repealing Chapter 64B and incorporating the meals tax into the general sales tax provisions, Chapter 64H. Inasmuch as the assessments here were for the period November 1975 through August 1977, the applicable statute is Chapter 64B.

2. Chapter 62C of the General Laws was added by St. 1976, c. 415, § 22, effective January 1, 1977.

[*] emphasis supplied

need not file any meals tax returns set forth in said section 38.

This is not a case of a dispute as to the amount of the tax, something being due in any event. The appellant in this appeal has always maintained that it is not liable for any meals tax at all on the sale of the "party packs" and the board has so found.

Chapter 62C, § 37 provides that an application for abatement may be filed if the tax is excessive in amount or illegal.

We do not think it was the intent of the legislature in enacting said section 38 to bar a person on whom a meals tax was assessed for which he was not liable from obtaining an abatement because he had not filed a meals tax return at or before bringing his application for abatement.

"The policy that taxing statutes be strictly enforced and that citizens be diligent to protect their rights thereunder does not require exaction, as though they were taxes due, of assessments made without any basis in fact or in any construction of the law." **Leonardi v. State Tax Commission,** 355 Mass. 454, 459 (1969).

The second issue is on the merits and is whether the appellant's sale of "party packs" from the delicatessen section of its supermarket is subject to meals tax pursuant to c. 64B.

Chapter 64B as amended by St. 1975, c. 684, §§ 56 and 57, and c. 720, § 1, effective November 19, 1975 and c. 64B, § 2, as amended by St. 1971, c. 901, § 1, provides for an excise tax upon charges for "meals". Said section one defines "meals" and they must be provided by a "restaurant". The Commissioner contends that the "party packs" sold by the appellant are a "meal" provided by a "restaurant" within the purview of the statute and are subject to the meals tax. The appellant denied that the "party packs" are a "meal" and that the delicatessen section of the supermarket is a "restaurant" as so defined.

Said section one defines "meal" as follows:

" 'Meal', any food or beverage, or both, prepared for human consumption **and provided by a restaurant***, whether the food or beverage is intended for consumption on or off the restaurant premises, and includes food or beverages sold on a 'take out' or 'to go' basis, whether or not they are taken from the premises of the restaurant."

From this definition, it is apparent that the "party packs" sold by the appellant can be subject to the meals tax only if the appellant qualifies as a "restaurant" under the statute.

Said section one defines "restaurant" as follows:

" 'Restaurant', any eating establishment where food, food products, or beverages are provided and for which a charge is made, including but not limited to, a cafe, lunch counter, private or social club, cocktail lounge, hotel dining room, catering business, tavern, diner, snack bar, dining room, vending machine, and any other place or establishment where food or beverages are provided, whether stationary or mobile, termporary or permanent; provided, however, that **delicatessen, grocery, market or bakery stores shall not be considered eating establishments within the meaning of this chapter except*** for any part of such a store which engages, in the sale of dinners, luncheons, barbecued chicken, other than barbecued chicken sold whole and unsliced, sandwiches, snacks, pizzas, **and other similar items which are commonly sold at snack bars, coffee shops or luncheon counters;** provided, further, **that such stores shall not be deemed to be restaurants under this chapter based solely on the preparation**

---

* emphasis supplied

and sale of prepared meat, poultry and fish items if such sales constitute less than a major portion of the total sale of such stores;* and provided, further, that a vending machine shall not be considered an eating establishment within the meaning of this chapter in the instance in which it sells candy only."

The legislature has therefore provided specific definitions to govern a determination of whether the meals tax is applicable. The object of all statutory construction is to ascertain the true intent of the legislature from the words used. **Lehan v. North Main St. Garage**, 312 Mass. 547 (1943). Words of the statute must be given their natural and commonly accepted meaning. **Carlos Ruggles Lumber Co. v. Comm.**, 261 Mass. 450 (1928).

The said statutory definition of "restaurant" specifically states that a delicatessen or grocery market shall not be considered restaurants, except for any part that sells items "commonly sold at snack bars, coffee shops and luncheon counters". The Commissioner produced no evidence at the trial that "party packs" sold in bulk form, designed to be consumed by a multitude of people after considerable preparation, are commonly sold at snack bars, coffee shops and luncheon counters, and appellant's witness testified that they are not so sold.

The statute further provides that markets shall not be considered "restaurants" based solely on the preparation of or sale of prepared meats, etc. if those sales are less than a major portion of the total sales of such store. Here the sales of "party packs" constitute about 1% of the gross sales of the supermarket.

Neither can the delicatessen section of the supermarket be construed as a "catering business". A caterer is defined as one who provided provisions and service especially for entertainments at clubs, private houses, etc. **Webster's New International Dictionary, Second Edition**

Unabridged. A caterer provides a full dinner with table linens, waitresses, silverware, glasses, dishes, etc., and sometimes wines and liquors. A caterer also "sets up" and "cleans up" the meal. The delicatessen section of the supermarket could not be construed as a caterer within the statutory language or the common meaning of the term.

In **In re Fernandes Super Markets, Inc.,** United States District Court for the District of Massachusetts, No. 78-1713-HL, September 25, 1979, the Bankruptcy Court construed the meals tax on facts similar to this appeal. That case involved party platters sold at the delicatessen counter of a supermarket. The party platters were similar to the "party packs" except that no plastic spoons, forks and knives and bread were provided and they were smaller in size and sold by weight. The Court decided that the party platters were not "meals" and the delicatessen section was not a "restaurant" or a "catering business" within the meaning of the statute.

On the facts presented in this appeal, the meals tax was not properly assessed against the appellant for "party packs" sold at its delicatessen counter. Tax statutes are to be strictly construed and all doubts are to be resolved in favor of the taxpayer. **Massachusetts Assn. of Tobacco Distributors v. State Tax Commission,** 354 Mass. 85 (1968).

Our decision for the appellant was promulgated February 23, 1981.

APPELLATE TAX BOARD

By **John Mulvihill,** Chairman.
A True Copy
Attest:
        **Nancy L. Egan**
        **Asst. Clerk of the Board**