**STATE of Iowa, Appellant,**

v.

**Ralph PRYBIL, Appellee.**

No. 55535.

Supreme Court of Iowa.

Oct. 17, 1973.

Richard C. Turner, Atty. Gen., Bennett Cullison, Jr., Asst. Atty. Gen., and Robert Bartels, Special Asst. Atty. Gen., for appellant.

Jay H. Honohan, Iowa City, for appellee.

**McCORMICK, Justice.**

The State appeals trial court's judgment acquitting defendant Ralph Prybil, a member of the Johnson County board of supervisors, of receiving gratuities from contractors in connection with county business transactions in violation of Code § 741.1. We reverse but do not remand since defendant has been in jeopardy. § 793.9, The Code.

Code § 741.1 provides:

"It shall be unlawful for any agent, representative, or employee, officer or any agent of a private corporation, or a public officer, acting in behalf of a principal in any business transaction, to receive, for his own use, directly or indirectly, any gift, commission, discount, bonus, or gratuity connected with, relating to, or growing out of such business transaction; and it shall be likewise unlawful for any person, whether acting in his own behalf or in behalf of any copartnership, association, or corporation, to offer, promise, or give directly or indirectly any such gift, commission, discount, bonus, or gratuity.

The provisions of this section shall not be construed to apply to officials or employees of the state of Iowa nor to legislators or legislative employees."

The offense is an indictable misdemeanor, punishable by a fine of not less than $25 nor more that $500, or by county jail imprisonment for not more than one year, or by both such fine and imprisonment. § 741.2, The Code.

Defendant was alleged to have violated the statute by receiving meals, books, and convention hotel expense from contractors in connection with county purchases of equipment, material, and services. He entered a not guilty plea, waived jury trial pursuant to Code § 780.23, and was tried by the court.

The State introduced evidence relating to five separate transactions, three with the Herman M. Brown Company, one with Wheeler Lumber, Bridge and Supply Company, and one with the L. L. Pelling Company. Expense vouchers submitted by salesmen for the Brown and Wheeler companies indicated the companies paid for lunches at which purchases were discussed with the board of supervisors. On one occasion, two days after the Wheeler company sold the county a pole shed, its salesman entertained the board at a Des Moines supper club. A month later he sold them an enclosure fence for the county yard. The State contended defendant's proportionate share of these meals constituted unlawful gifts to him under § 741.1.

Records of the Pelling Company showed expenses of $21.53 in payment of December 11, 1969, convention hotel expense for defendant and his wife and $20.95 on December 22, 1969, for a gift of books to defendant. In a series of transactions between September 11, 1969, and January 19, 1970, the company did more than $10,000 worth of road and equipment repair for the county.

Trial court held the State failed to carry its burden of proof and acquitted defendant. The court also interpreted § 741.1 differently than the State believed it should. The State alleges trial court erred in (1) limiting the terms "gift[s], commission, discount, bonus or gratuity" to kickbacks, (2) requiring proof such kickbacks were made as specific inducement for a particular sale or as a reward for a particular purchase, and (3) finding the State's evidence insufficient to establish defendant's guilt.

I. We have not previously interpreted § 741.1. Familiar principles of stat-

utory construction are applicable. The goal is to ascertain legislative intent in order, if possible, to give it effect. Words are given their ordinary meaning unless defined differently by the legislature or possessed of a peculiar and appropriate meaning in law. Other pertinent statutes must be considered. Effect is to be given to the entire statute. Its terms are not to be changed under the guise of construction. Maguire v. Fulton, 179 N.W.2d 508, 510 (Iowa 1970), and citations. In searching for legislative intent, we consider the objects sought to be accomplished as well as the language used and place a reasonable construction on the statute which will best effect its purpose. Crow v. Shaeffer, 199 N.W.2d 45, 47 (Iowa 1972).

Code § 741.1 was enacted in 1907 as Acts 32 G.A. ch. 183, § 1. It was entitled "AN ACT to prohibit the corrupt influencing of agents, representatives, employees, officers of a private corporation, or public officers acting in behalf of a principal in any business transaction and provide a penalty therefor."

The statute thus reaches private as well as public employees. In its relationship to private employees it is a commercial bribery statute. As to public employees it fits in the scheme of statutes prohibiting public officer corruption. See §§ 739.1, 739.10, 739.11, The Code. The purpose of statutes like § 741.1 has frequently been discussed. New York prohibited commercial bribery in § 439 of its Penal Law of 1909, (now repealed and replaced by §§ 180.00 and 180.-05 of its present Penal Law, McKinney's Consol.Laws, c. 40). In People v. Davis, 33 N.Y.Crim. 460, 160 N.Y.S. 769 (1915), the court held the purpose of § 439 was to prohibit agents from considering their own personal welfare by making contracts favorable to themselves rather than their employers. The court said "secret commissions are to be condemned because they prompt a servant to betray his master, and thus prejudice the master's interests in consideration of pay received from others," 160 N.Y.S. at 776, and also, "[a] bonus or commission, secretly given is nothing short

of a bribe to betray one's employer," 160 N.Y.S. at 777.

Under a statute similar to ours the Connecticut court in State v. Aldridge, 25 Conn.Sup. 257, 268, 202 A.2d 508, 514 (Super.Ct.1964), said, "It is the intention of this statute to prohibit a person who has the authority to make contracts or transact business on behalf of a public or private corporation from accepting any payment, commission or compensation or gratuity of any kind from the person with whom he makes the contract or transacts business." For similar statements, see State v. Brewer, 258 N.C. 533, 129 S.E.2d 262 (1963); State v. Landecker, 100 N.J.L. 195, 126 A. 408 (1924), affirmed 103 N.J.L. 716, 137 A. 919; Note, 108 U.Pa.L.Rev. 848; Note, 46 Minn.L.Rev. 599; annot., 1 A.L.R.3d 1350 et seq.

In its application to public officers § 741.1 resembles 18 U.S.C. §§ 201(f) and (g), lesser offenses in the hierarchy of federal officer corruption defined in 18 U.S.C. § 201. Section 201(f) prescribes punishment for one who, "otherwise than as provided by law for the proper discharge of official duty, directly or indirectly gives, offers, or promises anything of value to any public official * * * for or because of any official act performed or to be performed by such public official * * *." Section 201(g) makes punishable the receiving of such benefit by the public official. The scope and purpose of these prohibitions has been defined:

"The awarding of gifts thus related to an employee's official acts is an evil in itself, even though the donor does not corruptly intend to influence the employee's official acts, because it tends, subtly or otherwise, to bring about preferential treatment by Government officials or employees, consciously or unconsciously, for those who give gifts as distinguished from those who do not. * * * The iniquity of the procuring of public officials, be it intentional or unintentional, is so fatally destructive to

good government that a statute designed to remove the temptation for a public official to give preferment to one member of the public over another, by prohibiting all gifts 'for or because of any official act,' is a reasonable and proper means of insuring the integrity, fairness and impartiality of the administration of the law." United States v. Irwin, 354 F.2d 192, 196 (2 Cir.1965), cert. denied, 383 U.S. 967, 86 S.Ct. 1272, 16 L.Ed.2d 308.

■ We believe the plain language of § 741.1 and its relationship to Code §§ 739.1, 739.10, and 739.11, prohibiting other kinds of official corruption, demonstrate the legislature intended it to have the same scope, purpose, and effect as 18 U.S.C. §§ 201(f) and (g).

Trial court relied upon Dukehart-Hughes Tractor & Equipment Co. v. United States, 341 F.2d 613, 169 Ct.Cl. 522 (1965), in giving it a much more limited effect. That case was an action by a contractor for a tax refund after disallowance by the Internal Revenue Service of deductions for expense of entertainment of Iowa public officials. In granting the refund the court held the entertainment did not violate Iowa public policy manifested in § 741.1. The court decided the statute is aimed at kickbacks, does not necessarily bar entertainment of or gifts to agents of potential customers, refers to bounties paid in connection with a particular transaction, and uses the enumeration "gift, commission, discount, bonus, or gratuity" as an elaboration of types of kickbacks. A dissent argues the statute is not limited to kickbacks and bars gratuities related to multiple as well as single business transactions. We find the dissent accords with our view of the statute.

■ The statute does not use the word "kickback," and there is nothing in its language, context, or purpose to justify substituting that word for the words that are used. In its normal meaning, a kickback is the "payment of money or property to an

individual for causing his employer * * * or principal to buy from, to use the services of, or to deal otherwise with, the person making the payment." Ballentine's Law Dictionary (Third Ed. 1969). Limiting the bounties enumerated in § 741.1 to kickbacks would have the effect of reading the terms "gift," "gratuity" and "bonus" out of the statute. Also, by prohibiting only payments to reward corrupt influence, the *Dukehart-Hughes* majority interpretation contradicts the statutory language which broadly enjoins benefits "connected with, relating to, or growing out" of any business transaction. The statute does not require proof the transaction is corrupt, only that the transaction is the reason for the payment. If it is, the payment is corrupt but not necessarily the transaction. "It is not necessary for the Government to show that the gift caused or prompted or in any way affected the happening of the official act or had anything to do with its nature or the manner or means by which it was performed." United States v. Irwin, *supra,* 354 F.2d at 197.

The prohibition of § 741.1 is not limited to kickbacks. Trial court erred in holding it is.

■ II. We also disagree with trial court's conclusion that the statute requires the State to single out one of what may be a series of business transactions as connected to a single unlawful payment. Unless otherwise specified, the use of the singular in a statute includes the plural. § 4.-1(3), The Code. The statute thus bars corrupt influence as to "any business transactions" as well as to "any business transaction." The word "any," which is used seven times in § 741.1, is employed to enlarge rather than limit the terms modified. It means "every" and "all," not "one." See State v. Steenhoek, 182 N.W.2d 377, 379 (Iowa 1970), appeal dismissed, 404 U.S. 878, 92 S.Ct. 195, 30 L.Ed.2d 159; Iowa Illinois Gas & Elec. Co. v. City of Bettendorf, 241 Iowa 358, 363–364, 41 N.W.2d 1, 4 (1950).

■ Under trial court's reasoning, based upon *Dukehart-Hughes,* it would become proportionately more difficult to prove guilt as the number of transactions with the donor increased. If a gift followed one purchase and preceded another, the State would be charged by that view with proving its connection with one to the exclusion of the other. The gift may in fact have been a reward for the first purchase and an inducement for the second. We believe the statute plainly permits a jury to convict in such circumstances if it finds the gift was related to both transactions or either of them.

■ Similarly, when there is a series of purchases, the State meets it burden as well by showing the gift was connected with the series of transactions as it would by singling out one of them. It is as great a wrong under the statute for a public officer to enter a series of transactions in relation to a single gratuity as it would be for him to enter a single transaction in relation to the same gratuity. The same is true as to gratuities received by reason of a series of completed transactions.

The federal statute, 18 U.S.C. § 201, has been applied to multiple transactions although it refers to "any official act" in the singular. See, for example, United States v. Irwin, *supra,* where the single $400 payment was allegedly made in relation to a series of tax audits; see also United States v. Kenner, 354 F.2d 780 (2 Cir. 1965), cert. denied, 383 U.S. 958, 86 S.Ct. 1223, 16 L. Ed.2d 301.

Trial court erred in holding the term "business transaction" as used in the statute is restricted to singular meaning.

III. In its third assignment of error the State asks us to apply the correct interpretation of § 741.1 to the evidence in this case and hold trial court erred in acquitting defendant. This we decline to do. "A pronouncement from us on the fact situation in one case rarely serves any good purpose in determination of future cases.

Such appeals by the State are useless. While the matter of sufficiency or insufficiency of the evidence is a question of law this court will refuse to review the record where it will benefit no one." State v. Wardenburg, 261 Iowa 1395, 1398, 158 N. W.2d 147, 149 (1968).

There is however one question of law raised in this assignment of error which can be decided. That is whether § 741.1 is violated by a contractor's payment of the expense of an ordinary business luncheon with a public officer at which a past or future transaction is discussed.

■ We do not believe such payment is a prohibited gift or gratuity. The statute is directed toward conduct by its nature calculated to undermine an employer's relationship of trust with his employee. To be corrupt the influence must involve the transfer of something of value for the employee's own private use. At an ordinary business luncheon the employee is on his employer's business and not in any substantial sense receiving an inducement to breach his trust. He would frequently prefer to be somewhere else. The motivating factor for the occasion is the employer's business and not the private interest of the employee.

Apart from our interpretation of legislative intent in § 741.1, there is additional authority for recognizing this distinction. This kind of occasion was an early exception to common law bribery. 3 Coke, Institutes, 145 (1648). It is also an exception to the analogous federal statute, 18 U.S.C. § 201, recognized in Executive Order 11222, establishing "Standards of Ethical Conduct for Governmental Officers and Employees," Part II, b(2). 18 U.S.C. A. § 274. Federal employees are expressly permitted to accept "food and refreshments available in the ordinary course of a luncheon or dinner or other meeting or on inspection tours where an employee may properly be in attendance." We believe the same conduct is permitted under § 741.1.

**314**

But free dinner and drinks at a supper club in celebration of a large purchase by the county, if proven, would not be in the same category. Similarly, a gift of books or payment of convention hotel expense would ordinarily be no different under the statute than an outright payment in cash to the public officer for his own use and, if related to a business transaction, would constitute prohibited corrupt influence.

Since defendant cannot be affected by a reversal of this case we do not reach his separate contentions that the statute denies him equal protection under Amendment 14, United States Constitution, and that the State's evidence was insufficient to support conviction. See State v. Fairmont Creamery Company, 153 Iowa 702, 716, 133 N.W. 895 (1911).

Reversed but not remanded.

All Justices concur except HARRIS, J., who dissents.

HARRIS, Justice (dissenting).

I respectfully dissent from division II and the result. Section 741.1, though in many ways unusual, strikes me as clear and unambiguous. I do not believe section 4.1(3), The Code, is sufficient to do away with a vital element of the offense. Under the interpretation adopted by the majority an accused may be convicted of receiving gratuities even in the absence of evidence connecting the gratuity with a specific transaction. I believe the clear wording of the statute requires such a connection and do not believe the requirement is obviated by section 4.1(3).

It seems to me more is involved than simply proscribing plural acts in situations where the statute proscribes only a singular act. In the process of the majority interpretation the State is unfairly excused from the necessity of connecting up its case. Our interpretation should not be controlled or influenced by the difficulty of the State's proof, nor with a view to the improvement of the statute. Neither should a statutory rule of construction, allowing for the singular to stand for the plural, relieve the State from showing a prescribed relationship between a specific gratuity and a specific transaction.

Because I believe an element of proof is involved, I believe the statute falls outside the purview of section 4.1(3) and within those situations it expressly excepts: those " * * * otherwise specifically provided by law." I believe the defendant's acquittal should be affirmed.